———o———

## No. 5866.

## PAUL CASTILLION, FOR THE USE, ETC., vs. JOHN L. WALSTEN, ET. AL.

### Syllabus.

### On Rehearing.

Former decree reinstated.

His Honor, JOHN ST. PAUL, rendered the opinion and decree of the Court, as follows:

— 9 —

Appeal from the Civil District Court for the Parish of Orleans, Division "E," No. 99,884. Hon. G. H. Theard, Judge.

Wm. J. Formento, Tiessier & Tiessier, for plaintiff and appellant.

C. Hunt, for defendant and appellee.

On rehearing the position of plaintiff is substantially this: that if the testimony of Mrs. Talluto be disregarded as false (and he urges that it should be) then this case is similar in its main features to, and in some respects even stronger against defendant than Doyle vs. Fuerst & Kraemer, 129 La., 840.

In the opinion heretofore handed down, it is said: "If we accept as true the testimony of Mrs. Talluto as to the meal which plaintiff's child ate at her house on that day, it is not difficult to perceive how the young girl might have been attacked with acute indigestion. * * * But even if we disregard that evidence the record does not show that the defendants are to blame, or that the illness complained of was due to the eating of the cream puff."

A careful reconsideration of the case convinces us, first, that it is not similar in its main features with Doyle vs. Fuerst & Kraemer, supra, and second, that even if we disregard the testimony of Mrs. Talluto (which does not impress us favorably) the record still does not show with anything like legal certainty, that the illness complained of was due to the eating of the cream puff.

In the Doyle case the cream, cake and chocolate were purchased, and were eaten by persons of mature physique, at 11 o'clock at night, after several hours spent at the theatre; the symptoms of ptomaine poisoning manifested themselves towards 5 o'clock the next morning.

The evidence in the case failed to show "when the ice cream, cake and chocolate had been made; so that for what appears the materials out of which these refreshments had been made may have had ample time to deteriorate on defendant's hands, and the refreshments themselves may have been of long standing, kept on hand indefinitely until they were disposed of in due course of business." (129 La., 840.)

The principle which covered that case, gathered from authorities in contracts of sale, not in tort, is stated to be, that a vendor must know the defects of the thing he fabricates himself, and is liable to the purchaser for such damages as might have been foreseen, i. e., by reason of his contract and according to the rule of damages applying to contracts.

In the case at bar there was no sale, but a gift in good faith; and that was one of the reasons why the present writer approved the original decree herein, believing then as he believes now, that the principle in the Doyle case has, and can have, no possible application to the case at bar; but he then found it unnecessary to state those reasons, as his colleagues were and are not prepared to express themselves to that extent.

Be that as it may, the facts of this case are quite different from those in the Doyle case. Here the evidence shows that the nature of the material of which the puff was made was not such that it could deteriorate before being made up; that puffs were not kept beyond the day on which they were made; that the very puff which was eaten was made at 8 o'clock, and consumed between 9 and 1 o'clock of the same day, and according to Louisa Castillion herself, so long before 1 o'clock that ptomaine

symptoms had already sufficiently developed to prevent her from eating the dinner which was ready at that hour.

In the **Doyle case** it was made clear that nothing else had been eaten at or about the same time. Here it is not. For two grown persons spending several hours at a theater, after the day's work is done and the day's nourishment has been taken, are differently situated from two growing children moving in and around a house and kitchen, where food is being prepared and eatables are likely to be.

The story then of Mrs. Talluto if not true is, in part at least, possible. And the rapidity with which the puff must have deteriorated, and is said to have affected the children, does not commend itself for inherent probability.

There is therefore an element of doubt in this case, not present in the **Doyle case.**

As to the evidence of ptomaine poisoning, there is only the testimony of students who had never seen another case. They diagnosed the illness as such, but gave no details. Neither of them mentioned "tyrotoxicon," so that the expert testimony of Dr. Rudolph about tyrotoxicon has no application here.

As to ptomaine poisoning he testified, not from having seen the patient or from the testimony given by the witnesses, but from statements made to him out of court, and his evidence therefore proves nothing. Here then is another element of doubt, not present in the **Doyle case.**

The opinion heretofore handed down therefore correctly says that "even if we disregard that evidence (the tesimony of Mrs. Talluto) the record does not show that defendants are to blame, or that the illness complained of was due to the eating of the cream puff."

— 12 —

It is therefore ordered that our former decree be reinstated and made the final judgment of the Court.

Opinion and decree Dec. 22, 1913.

Former opinion Vol. 10, Court of Appeal, p. 286.